**In the Matter of the Petition of BRAINERD NATIONAL BANK for Issuance of New Certificate of Title.**

No. C9–84–863.

Supreme Court of Minnesota.

March 14, 1986.

John W. Person, Breen & Person, LTD., Brainerd, for Brainerd National Bank; James D. Olson, Tammy L. Pust, Best & Flanagan, Minneapolis, of counsel.

Robert E. Cattanach, D. Charles Macdonald, Oppenheimer, Wolff, Foster, Shepard and Donnelly, St. Paul, for Margaret Thelen; Christon L. Drake, Ryan, Ryan, Ruttger & Drake, Brainerd, of counsel.

WAHL, Justice.

This case raises two issues of practical importance to real property law. Does a trial court have jurisdiction under Minn.R. Civ.P. 60.02 to vacate a Torrens title decree for excusable neglect of counsel? And, after foreclosure of a mortgage on real property, must a senior lienholder file notices of intent to redeem each lien held, even though the liens are consecutive, in order to protect those interests as against a more junior redemption? The trial court first exercised such jurisdiction by vacating a newly-issued decree of Torrens title, then rescinded the vacation of title and reinstated the original decree. The Court of Appeals found jurisdiction and then ruled on the merits of the title dispute holding that, on the facts of this case, compliance with the redemption statute was not required. We reverse.

Margaret Thelen ("Thelen") held three consecutive mortgages on Torrens-registered property in Crow Wing County, Minnesota. The mortgages secured loans made to the property owners and represented liens against the property in the amounts of $150,000, $75,000, and $50,000. The three liens were properly filed on the Torrens Certificate of Title. The first mortgage went into default and Thelen foreclosed; neither the second or third mortgages were in default and they were not foreclosed. On the day Thelen filed notice of foreclosure of the first mortgage, the Brainerd National Bank ("Bank") took a fourth mortgage on the property to secure a pre-existing debt of the property owners, now also in default. The Bank knew of Thelen's senior liens and their amounts when it took this interest in the property.

Thelen purchased the property at the foreclosure sale for the amount of the foreclosed first mortgage plus costs. Within the statutory period for redemption by junior creditors, the Bank filed notice of intent to redeem its fourth mortgage. Thelen did not file notice of intent to redeem her second and third mortgages until after the statutory period for redemption had expired. The Bank redeemed the property from Thelen, now the owner, for the amount of the first mortgage only.

The Bank petitioned for a new certificate of title clear of Thelen's prior interests. Thelen received notice of the hearing, but her attorney was hospitalized and no one appeared on her behalf, though an attorney from the same firm appeared for a mechanics lienholder. The petition went unopposed, a decree of title was issued in the Bank's name and Thelen's two remaining liens were removed from the title.

Thelen's attorney subsequently petitioned to have the new decree of title vacated or modified on grounds of excusable neglect of counsel under Minn.R.Civ.P. 60.-02. The motion was granted and the decree of title vacated. Thelen was given a short time for discovery and briefing of claims that her second and third mortgages had not been extinguished and remained encumbrances on the property. The Bank challenged the trial court's jurisdiction to vacate a Torrens title decree, arguing Minn.Stat. ch. 508 ("the Torrens Act") makes such decrees virtually absolute. The trial court concluded it had in fact lacked jurisdiction and reinstated the decree of title as originally entered. Thelen appealed.

The Court of Appeals reversed, holding a Torrens title decree entered in a proceeding subsequent to initial Torrens registration may be vacated on grounds of excusable neglect of counsel. *Thelen v. Brainerd National Bank,* 360 N.W.2d 353, 355–56 (Minn.Ct.App.1984). The appeals court went on to decide the merits of the title dispute, though that issue had not been raised on appeal. The appeals court held

Thelen's failure to comply with the redemption statute would not result in the unredeemed liens being extinguished because, under the unique facts of her case, no purpose of the redemption statute would be served by strict enforcement. *Id.* at 356. To acquire unencumbered title, the Bank, as redemptioner, would be required to satisfy Thelen's second and third mortgages. *Id.* at 357. We granted the Bank's petition for further review.

## I.

■ Does a trial court have jurisdiction under Minn.R.Civ.P. 60.02 to vacate a Torrens title decree for excusable neglect? Minn.R.Civ.P. 60.02 provides that a district court may relieve a party from a court order, judgment, or proceeding on the grounds of excusable neglect. The Rules of Civil Procedure do not, however, apply to Torrens Act proceedings if the rules are inconsistent or in conflict with provisions of the Act. Minn.R.Civ.P. 81.01 and Appendix A. A rule of civil procedure is inconsistent or in conflict with the provisions of a statute if the essential purpose of the statute would be frustrated by application of the rule. *Guillaume & Associates, Inc. v. Don-John Co.,* 336 N.W.2d 262, 263 (Minn. 1983). A central purpose of the Torrens Act is conclusiveness and indefeasibility of title once adjudicated. *Murphy v. Borgen,* 148 Minn. 375, 377, 182 N.W. 449, 450 (1921). Rule 60.02, on the other hand, reflects the court's reluctance to allow substantive rights to be decided on technical grounds where no harm will result from delay. *Guillaume,* 336 N.W.2d at 264.

Rule 60.02 is inconsistent with the following provision of the Torrens Act, Minn. Stat. § 508.22 (1984), which states that except as otherwise provided: [1]

[E]very decree of registration shall bind the land described in it, forever quiet the title to it, and be forever binding and conclusive upon all persons * * *. The decree shall not be opened, vacated, or

set aside by reason of the absence, infancy, or other disability of any person affected by it * * *.

Section 508.22 expressly provides that the finality and certainty of a Torrens title decree will not be set aside on the grounds of "the absence * * * of any person affected by it" and this provision of the statute cannot be harmonized with Rule 60.02. We so held in *Murphy, supra.* making clear:

Such a construction of the statute [permitting the reopening of a Torrens title proceeding on grounds of excusable neglect of counsel] would in effect reduce the Torrens proceeding to the ordinary action to determine adverse claims, exposing the final decree therein to all the uncertainties and delays incident to an action of that kind after judgment. If the statute were construed to grant that authority to the court, the finality of the decree, the fundamental basis, as well as the capstone of the Torrens system of perfecting land titles, would disappear, for just what a court may do to the Torrens judgment or application addressed to its equitable powers will find a limit only in the ingenuity of counsel in searching for and devising methods of attack.

148 Minn. at 377, 182 N.W. at 450. In *Murphy* we considered and rejected arguments similar to those offered by Thelen for reopening a Torrens title proceeding for excusable neglect. There, a party claiming an interest in a property was served with a summons to appear at a proceeding to register the property in the Torrens system, but he made no appearance. Judgment was entered by default. The party later made a showing of excusable neglect that, we acknowledged, would be "sufficient in an ordinary action to warrant the court in vacating a judgment." *Id.* at 376, 182 N.W. at 449. On the basis of statutory language identical to the current version of section 508.22, however, we found that even "construed with the utmost liberali-

1. Certain exceptions to the finality of decrees under section 508.22 are specifically provided for by the Torrens Act.

ty," the statute was "far too specific and clear" to support a decision against finality. *Id.*, 182 N.W. at 450. "The party served with the summons in the Torrens proceeding is given his day in court and under that statute must suffer the consequence of his failure to appear and present his defense, for no relief for his default is there given." *Id.* at 377, 182 N.W. at 450. *Murphy* stands for the principle that any provision for relief on the basis of excusable neglect has no application to Torrens proceedings.

Thelen seeks to distinguish *Murphy*, arguing that case dealt with an initial Torrens registration proceeding whereas she seeks relief from a title decree entered in a proceeding subsequent to initial registration. The interest in Torrens finality, she claims, is not so great in a proceeding subsequent, where the land is merely changing hands, as in an initial proceeding, where the land is being forever brought within the Torrens system and all possible adverse claims to the title must be settled. Because she claims the countervailing interest in finality is less, she urges this court to more readily vacate title decrees entered in proceedings subsequent for reasons of "fundamental fairness." The Court of Appeals adopted this rationale and distinguished initial Torrens proceedings from proceedings subsequent because in the latter, "[t]he use of normal procedural tools of the trial court is * * * necessary to a fair determination of the interests involved." *Thelen*, 360 N.W.2d at 355. Rule 60.02, the appeals court concluded, properly applies to a proceeding subsequent.

■ Such a distinction between initial and subsequent proceedings is contrary to the language of section 508.22 and the decisions of this court. The finality imposed by section 508.22 applies, by the statute's language, to "every decree of registration." We have never interpreted section 508.22 as having a different effect in initial and subsequent proceedings. We are not persuaded that there is a lesser interest in finality in a proceeding subsequent such that an interest in fairness to individual parties should override Torrens finality.[2] There is no greater right to assert adverse claims in proceedings subsequent than in initial proceedings. Our decision in *Murphy v. Borgen, supra.* controls this case. Finding Minn.R.Civ.P. 60.02 inconsistent and in conflict with section 508.22, a provision of the Torrens Act, we hold Rule 60.02 does not apply to Torrens title proceedings. Thus, we hold the trial court properly ruled it had no jurisdiction to vacate a decree of title for excusable neglect.[3] The decision of the Court of Appeals is reversed, and the order of the trial court reinstating the decree of title as originally entered is affirmed.

2. The instances in which we have found the Torrens Act's prohibition against setting aside a title decree must defer to the overriding interests of fairness or due process are few. *See, e.g., C.S. McCrossan, Inc. v. Builders Finance Co.,* 304 Minn. 538, 232 N.W.2d 15 (1975) (clerical errors), *In re Petition of Estate of Koester,* 297 Minn. 387, 211 N.W.2d 778 (1973), *Konantz v. Stein,* 283 Minn. 33, 167 N.W.2d 1 (1969) (no actual notice of Torrens proceedings given the party in possession of the property); and *Baart v. Martin,* 99 Minn. 197, 108 N.W. 945 (1906) (title decree procured by fraud). The decision of each of these cases was limited to its particular and unusual facts and provides no basis for implying a general "fairness" exception to absolute Torrens finality. Nor do we recognize such a general exception here.

3. Thelen has made allegations the Bank fraudulently procured the title decree. The Torrens Act makes an exception to the otherwise absolute finality of a Torrens title decree where the decree is procured by fraud. Minn.Stat. § 508.51 (1984). The issue of fraud was apparently not raised to the trial court, but appears for the first time in Thelen's brief to the Court of Appeals. The general rule is that an issue not raised or considered by the trial court may not be raised for the first time on appeal. *In re the Welfare of K.T.,* 327 N.W.2d 13, 16–17 (Minn. 1982). Thelen's case, however, was appealed on a jurisdictional issue and she had no opportunity below to present evidence or develop facts other than in motions seeking the opportunity to be heard by the trial court. That this court has not ruled in Thelen's favor on the issue of jurisdiction to vacate the title decree on the basis of Rule 60.02 does not affect her statutory right to reopen the title proceeding on the basis of fraud. Thelen may move the trial court to set aside the title decree on the basis of fraud and if the hearing is granted, the merit of her allegations may be considered there.

## II.

Our decision on the first issue settles the appeal as it was originally taken. We find it necessary, however, to address the merits of Thelen's request for modification of the title decree because that issue was decided by the Court of Appeals and argued in this court. The Court of Appeals held that Thelen's failure to redeem her second and third liens did not extinguish those interests and that the Bank must satisfy those interests to acquire clear title. Where there are successive senior interests held by one lienholder, of which the junior lienholder seeking redemption has actual knowledge, the appeals court reasoned, the senior lienholder is not required to go through "the idle ceremony" of redeeming from herself in strict compliance with the redemption statute in order to preserve those interests. *Thelen*, 360 N.W.2d at 356.

This conclusion, as noted in the dissenting opinion to the appeals court decision, is contrary to the rule set down by this court in a line of cases reaching back over one hundred years. *Moore v. Penney*, 141 Minn. 454, 170 N.W. 599 (1919), states the rule succinctly:

> Each lien stands by itself and is cut out unless redemption be made under it. If a creditor who holds two liens redeems under his senior lien and wishes to preserve and enforce his junior lien, he must also redeem under the junior lien even if it be next in line. The fact that he has redeemed under the senior lien and also holds the next junior lien give him no other or different rights under the junior lien than would be possessed by any other creditor holding such junior lien. * *

> [I]n order to preserve any rights under a junior lien, the junior creditor must redeem under it from the senior creditor who made the redemption next prior in time, even if he himself be such senior creditor.

*Id.* at 456, 170 N.W. at 600.[4] *See also Ritchie v. Ege*, 58 Minn. 291, 59 N.W. 1020 (1894); *Buchanan v. Reid*, 43 Minn. 172, 45 N.W. 11 (1890); *Parke v. Hush*, 29 Minn. 434, 13 N.W. 668 (1882); *Pamperin v. Scanlan*, 28 Minn. 345, 9 N.W. 868 (1881).

The most recent of this line of cases, *Graybow-Daniels Co. v. Pinotti*, 255 N.W.2d 405 (Minn.1977), has facts which cannot be distinguished from those of Thelen's case. Graybow-Daniels held a fourth mortgage on property to which Merchants State Bank held three prior mortgages. The bank foreclosed all three senior mortgages, but did not file any notices of intent to redeem. Graybow-Daniels filed a notice of intent to redeem and tendered to the bank via the sheriff the amount of the bank's first mortgage only. Both the sheriff and the bank refused to accept the tender, claiming Graybow-Daniels was also required to pay off the second and third mortgages. Graybow-Daniels sued for a writ of mandamus to force the sheriff to accept the tender and issue a certificate of redemption, claiming the bank's failure to file notices of intent to redeem had extinguished its second and third liens. *Id.* at 406. This court agreed. By failing to redeem its interests, we held, the bank lost the right to demand payment of these mortgages when Graybow-Daniels sought to redeem the property under the first mortgage only. *Id.* at 407.[5]

---

4. In *Moore*, we stated the holder of successive liens who redeems from himself or herself need not actually transfer money, but need only place documents on public record showing that he or she is entitled to redeem the lien and has elected to do so. 141 Minn. at 456–57, 170 N.W. at 600.

5. The Court of Appeals attempts to distinguish the facts of *Graybow-Daniels* on two grounds. First, that Torrens-registered land was not at issue in the case and second, because Thelen, in contrast with the bank in *Graybow-Daniels*, nev-

er foreclosed her second and third mortgages. These attempts at distinction are not persuasive. First, the redemption statutes apply to registered and unregistered land alike. Further, even if it made a difference whether all senior successive liens had been foreclosed, cases on which *Graybow-Daniels* relied involved precisely the facts of Thelen's case, where some successive mortgages held by a senior lienholder had been foreclosed and some had not. *See, e.g., Moore, supra.* and *Buchanan, supra.*

Thelen argues this longstanding rule should not be followed in her case because no purpose of the redemption statute would be served by requiring a holder of successive senior liens to preserve her interests by redeeming from herself where the redemptionor has actual notice of the existence and value of these prior liens. We do not agree. The purpose of redemption is to allow junior creditors to preserve their interests, which would otherwise be extinguished by foreclosure of senior liens. *Pamperin v. Scanlan*, 28 Minn. at 348, 9 N.W. at 869. The record notice required in the redemption procedure is essential to preserving these rights and we have required strict compliance with the notice provisions of the statute.[6] *See, e.g., Taber v. Rathbun*, 168 Minn. 370, 210 N.W. 95 (1926). Actual notice, obtained, we presume, by direct communication with a senior lienholder or "through the grapevine," is not an adequate substitute for the certainty and accuracy of the record notice required by the redemption statute. We therefore reject Thelen's argument for an exception to strict enforcement of the notice requirements of the redemption statute on the particular facts and circumstances of this case.[7]

There being no ground on which to distinguish *Graybow-Daniels*, and no convincing legal or policy argument for an exception to its rule, we hold Thelen's failure to redeem her second and third liens within the prescribed period results in her liens being extinguished. The order of the Crow Wing County Court issuing a new certificate of title in the Bank's name free of Thelen's interests was proper and we reinstate that order.

Reversed; judgment of the trial court reinstated.

6. A redemptioner must file notice of intention to redeem, pursuant to Minn.Stat. § 580.24 (1984), as well as legal substantiation of the existence of his or her lien (and right, therefore, to redeem) and an affidavit specifying the amount then actually due on the debt the lien secures, pursuant to Minn.Stat. § 580.25 (1984). This affidavit informs more junior lienholders of the amount they will have to pay when their opportunity to redeem comes up. The affidavit is conclusive as to the amount for the purposes of redemption. *Taber v. Rathbun*, 168 Minn. 370, 372, 210 N.W. 95, 96 (1926).

7. The Real Property Council, Real Property Law Section of the Minnesota State Bar Association, amicus curiae in this case, has rightly noted that recognizing an exception to strict enforcement of the redemption laws would endanger the predictability essential in the rules governing real estate transactions.