LYDIA WALTHAM V. TOWN OF MULLALLY.

[FILED OCTOBER 3, 1889.]

1. **Paupers:** TOWNSHIPS : LIABILITY FOR SUPPORT. The several townships of a county organized under the township system of government are charged by law with the care, support, and maintenance of paupers residing and legally settled therein, respectively.

2. **Supervisors:** PAUPERS : CONTRACT FOR SUPPORT. The supervisors of the respective townships are the officers charged by law with the duty of caring for, and contracting for their support and maintenance, and when they so contract, and the contractor earns money under such contract by furnishing such support and maintenance, in good faith, according to the terms of the contract, the township is liable and legally bound therefor; and such liability cannot be avoided by refusing or neglecting to vote and levy the necessary taxes for its payment.

ERROR to the district court for Harlan county. Tried below before GASLIN, J.

*Kidd & Porter*, and *F. B. Beall*, for plaintiff in error:

Under township organization, the supervisor is *ex-officio* overseer of the poor (Comp. Stats. 1887, ch. 18, sec. 37); and county is liable only when it has a lawful poorhouse. (Id., ch. 77, sec. 77; ch. 18, sec. 13.) All money for town purposes, authorized by vote of town meeting, or directed by law to be raised, is a town charge (Id., ch. 18, sec. 53); and the electors at the town meeting are empow-

ered to raise money for the support of the town poor when there is no county poor-house. (Id., ch. 18, sec. 12.) Hence, as plaintiff's petition sets up an express contract with defendant, the county is liable.

*Lamb, Ricketts & Wilson,* for defendants in error:

Plaintiff's petition is defective in failing to state to what county Mullally belongs, or that it has the authority of towns under the township organization act. Said act did not go into force until June 1, 1883, and even if township organization had been adopted at the first opportunity, there could have been no legal town meeting (at which alone the alleged obligation could have been incurred) before April, 1884, while said obligation is claimed to reach back to November, 1883. The fact that the town may have power to raise money to support the town poor, does not of itself *authorize* it to incur obligations; it must be specifically empowered. (*Stewart v Otoe County,* 2 Neb., 177; *Hallenbeck v. Hahn,* Id., 397; *S., etc., R. Co. v. Washington County,* 3 Id., 42; *Sexson v. Kelley,* Id., 107; *People v. Com'rs,* 4 Id., 157; *Hamlin v. Meadville,* 6 Id., 227; *McCann v. Otoe County,* 9 Id., 330; *Walsh v. Rogers,* 15 Id., 311; *State v. Lincoln County,* 18 Id., 283.) The exercise of the power is discretionary. For aught that appears in the petition, plaintiff's claim may have been rejected because the fund was exhausted, which would have been proper (*Lancaster County v. State,* 13 Neb., 523); and plaintiff's only remedy was appeal to the district court; an action directly against the town does not lie. An overseer of the poor may bind the county (*Gage County v. Fulton,* 16 Neb., 5); but it nowhere appears that he can bind the town.

Cobb, J.

This action is brought on error, by the plaintiff below, to the judgment of the district court of Harlan county.

The plaintiff complained of the town of Mullally in said county, for services rendered in the care and support of A. E. Davis, a pauper of said township, from November 26, 1883, to August 12, 1887, one hundred and ninety-three weeks, at nine dollars per week, amounting to the sum of $1,737, which services were rendered at the defendant's instance and request, and for which the defendant promised to pay the plaintiff on demand such sum as they were reasonably worth.

2. Such services, the plaintiff alleges, were reasonably worth the sum of nine dollars per week as stated, and that on March 27, 1888, the plaintiff presented to the supervisor of the defendant her account therefor, duly verified, which was wholly disallowed by the defendant at its regular meeting to consider the same, in April, 1888. The defendant appeared by attorney and demurred to the plaintiff's petition, for the reason that the facts stated are not sufficient to constitute a cause of action which was sustained by the court, with judgment for defendant's costs, to which the plaintiff excepts, and assigns as error; that the court erred in sustaining the demurrer of defendant to the plaintiff's petition.

The law for the government of towns in those counties where the system of township organization has been adopted is far from perfect, or comprehensive in its provisions; yet there is probably enough to be found in the statute book to warrant the holding that upon such towns is imposed the duty of caring for and supporting its local poor. In all states and countries, of which I have any knowledge, this duty, as well as the powers necessary to its discharge, is imposed upon the smallest subdivision of rural municipal government. Among the powers invested in the electors of the township by sec. 13, art. 4, ch. 18, Comp. Stats., is that of directing the raising of money by taxation " for the support of the poor within the town," but that power is not to be exercised when the county

board have established a poor-house under the statute of our state.

Section 53 of the same act provides that "The following shall be deemed town charges, to-wit: the compensation of town officers for services rendered their respective towns, contingent expenses necessarily incurred for the use and benefit of the town, the moneys authorized by the vote of any town meeting for any town purpose, and every sum directed by law to be raised for town purposes."

Section 54, following, provides that "the moneys necessary to defray the town charges of each town shall be levied on the taxable property in such town, in the manner prescribed by law for raising revenue. The rate of taxes for town purposes shall not exceed, for roads, two mills on each dollar of the valuation; for bridges, two mills on each dollar of the valuation; for all other purposes, three mills on each dollar of the valuation. And if the electors at the annual town meeting fail to vote a tax to pay the town charges hereinbefore specified, or the town board fail to certify up to the county board the amount of tax voted, if any, by a town meeting, then the county board shall have power, and it shall be the duty of such county board, to levy upon the taxable property in said town a tax sufficient to pay all such town charges."

Considering these provisions together it is the duty of each township to vote a tax at each annual town meeting sufficient to meet such expenses in the support and maintenance of the town poor as may be reasonably anticipated, and if, in any case, such duty is neglected, then it becomes the duty of the county board to levy upon the taxable property of such township a tax sufficient to pay all of such town charges.

It seems to be the contention of the defendant in error that a township may avoid the obligation of supporting its poor by simply refusing to vote a tax for that purpose. I do not agree with that proposition; nor that the power

or duty of the town supervisor to bind the town by contract for the support of a poor person in such township depends upon the fact of there being money on hand in the township treasury raised for such purpose. But, on the contrary, that the supervisor may, in the discharge of his official duty, incur a legal obligation on the part of the township for the support of a township pauper.

Sections 37, 38, and 39 of the statute provide:

"37. The supervisor of each town (who shall be *ex-officio* overseer of the poor) shall attend the regular meetings of the board of supervisors of the county and every adjourned or special meeting of said board of which he shall have notice; he shall receive all accounts which may be presented to him against the town; he shall lay before the board of supervisors such copies of entries concerning moneys to be raised in his town as shall be delivered to him by the town clerk.

"38. He shall keep a just and true account of the receipts and expenditures of all moneys which shall come into his hands by virtue of his office, in a book to be provided for that purpose at the expense of the town, and said book shall be delivered to his successor in office.

"39. On Tuesday preceding the annual town meeting he shall account to the town board for all moneys received and disbursed by him in his official capacity."

These provisions, while but a mere skeleton of township government, are sufficient to point out the duties of the supervisor, and of the town board, in regard to the care and support of the poor.

The defendant in error, in its brief, says that "if the plaintiff was dissatisfied with the rejection of her claim by defendant, her only remedy was appeal to the district court, as in claims rejected by the county board."

In reply to this proposition, the question as to whether this case was brought to this court by appeal or not, does not arise upon demurrer. If it did, we would then have

to say that it does not appear, from the record, in what manner the cause was brought into the district court, whether by appeal or original process, but as there must be further proceedings in the case, I will observe that I know of no authority, nor are we cited to any, for taking a claim either from a town board or a town meeting to the district court by appeal.

It is true that section 580 of the Code provides that "a judgment rendered, or final order made, by a probate court, justice of the peace, or any other tribunal, board, or officer exercising judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated, or modified by the district court." But this is not the provision relied on by counsel, but rather that of sec. 37, art. 1, chap. 18, Comp. Stats., which provides that "when the claim of any person against a county is disallowed in whole or in part by the county board, such person may appeal from the decision of the board to the district court of the same county, by causing a written notice to be served on the county clerk within twenty days after making such decision, and executing a bond to such county, with sufficient security, to be approved by the county clerk, conditioned for the faithful prosecution of such appeal, and the payment of all costs that shall be adjudged against the appellant."

This provision, substantially in its present form, has been in force since 1859. In the case of *The Sioux City & Pacific R. R. v. Washington County*, etc., 3 Neb., 39, in the opinion by Justice GANTT, the court says that "the act of February 15, 1869, * * * provides for a 'board of equalization for the county,' and that the county commissioners of each county shall constitute such board. This 'board of equalization' is a new one, created for a distinct object and purpose, different in name from that of a 'board of county commissioners,' and from the decisions of this new board there is no statutory provision for an appeal to the district court. Hence there is no remedy by appeal from its decis-

ions." Section 580 of the Civil Code was in force at the time this decision was made, but seems not to have been referred to in that branch of the decision. But in a subsequent portion of the opinion it was held that the proceedings of the county commissioners sitting as a board of equalization, being the final order of a board of inferior jurisdiction to the district court, a petition in error was the proper remedy and was allowable by statute.

The distinction between the application of a former provision of law giving an appeal and one giving a remedy by error, to the decision of a new board, subsequently created, as to both was not drawn, and does not appear from the opinion. The conclusion, however, is that when there are existing provisions of law giving a remedy by appeal from decisions of a board then in existence, that remedy does not pertain to the decisions of a board subsequently created by law; but that when such remedy is given by error, from the final decisions "of any probate court, justice of the peace, or any other tribunal, board, or officer exercising judicial functions inferior to the district court," such decision may be reversed, vacated, or modified by the district court. And the conclusion is drawn that it may be reached by proceedings in error. But the question remains, from the decision of what board, or tribunal, should the plaintiff in error have appealed? or rather, of what board did she complain in her petition in the court below? In this regard her petition is neither definite nor certain, and had the defendant moved for a ruling making it definite and certain, it should properly have been allowed. The language is "that on March 27, 1888, the plaintiff presented to William Waggoner, supervisor of said town of Mullally, her account duly verified, which account was wholly disallowed *by said town at their regular meeting in April, 1888.*" Whether this refers to a meeting of the township board, consisting of the supervisor, township clerk, and justice of the peace, or to the town meeting required by law to be

held on the first Tuesday of April of each year, does not appear.   If the former, then the question arises does that board exercise judicial functions?   If so, proceedings in error would lie from its decision rejecting a claim to the district court.

I am of the opinion, however, that the township board in no instance exercises judicial functions, or at least does not in a case of auditing and passing upon an account for supporting a pauper in accordance with a contract of the township made in its behalf by the supervisor.   The duties which it exercises in such case are simply those of an auditing board, to be governed by facts and figures alone without judicial learning or discretion.   If the claim of the plaintiff in error was rejected by the town meeting, by the people in their primary, elective, and governmental capacity, I think it must be conceded that neither appeal nor error lies from their decision.

I will now repeat that it seems clear to me that a township, in a county organized upon such basis, is the proper organization to be charged, and is by law charged with the support and maintenance of the poor residing and legally settled therein; and that the supervisor is the proper officer to be charged with the duty, and is by law so charged with looking after such poor, and contracting for their support, care, and maintenance; and that when he does so contract— probably within limits—for support and maintenance, and the contractor complies in good faith, the township is legally liable and bound therefor, and such liability cannot be avoided by refusing or simply neglecting to vote and levy the necessary taxes for its payment.

The judgment of the district court is reversed and the cause remanded for further proceedings, with instructions to allow the plaintiff to amend her petition as she may be advised.

JUDGMENT ACCORDINGLY.

THE other Judges concur.