IN RE PETITION OF ESTATE OF
LAURA GILL KOESTER TO
VACATE DECREE OF TITLE REGISTRATION.
ESTATE OF LAURA C. GILL KOESTER AND
OTHERS v. MAXINE B. HALE, FORMERLY KNOWN
AS MAXINE B. TROOLIN, AND OTHERS.

211 N. W. 2d 778.

October 19, 1973—No. 43888.

*Popham, Haik, Schnobrich, Kaufman & Doty, Rolfe A. Worden, Gary R. Macomber, Grundhoefer & Luedtke,* and *Marvin L. Grundhoefer,* for appellants.

*McMenomy, Hertogs & Fluegel* and *Edward B. McMenomy,* for respondents.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Kelly, JJ.

ROGOSHESKE, JUSTICE.

These proceedings involve the title to 10 acres of rural land, which will be here referred to as the "disputed tract," title to which was registered in 1951 pursuant to Minn. St. c. 508 by one of defendant Maxine B. Hale's predecessors in title. The first proceeding was an application to vacate and set aside the order and decree of title registration; the second was an action seeking to impress a trust in favor of the plaintiffs upon the disputed tract and to require defendants to convey the tract to plaintiffs or in the alternative to recover damages in the event plaintiffs suffered a loss of the title to the tract. The proceedings were consolidated for trial, and upon making findings of fact and conclusions of law, the district court denied plaintiffs the right to reopen the original title registration proceeding, but impressed a constructive trust upon the disputed tract in favor of plaintiffs and ordered the registrar of titles to cancel defendant Maxine B. Hale's certificate of title and issue a new certificate deleting from it the disputed tract. We affirm.

The disputed tract was originally acquired by James and Laura Gill in 1946 as part of a larger tract purchased from the State of Minnesota. In 1950, the Gills conveyed part of this land, but not the disputed tract, to Endre B. Anderson. Anderson mortgaged the lands so acquired, known as Heath Park Farm, to Lutheran Brotherhood. Subsequently, on March 27, 1951, Anderson filed an application to register all of the lands he had acquired, and by a mistake on the part of his attorney and of the examiner of titles, the disputed tract was included in the registration proceedings. The Gills, after their purchase of the disputed tract, remained in continuous possession until the death of James Gill in 1952. Thereafter, Laura Gill and her son, plaintiff Robert Gill, remained in possession. In 1959 she and Walter Koester, her second husband, entered a contract for deed with Robert Gill and Joyce, his wife, who continued in possession.

Such possession was open, continuous, and undisputed from the time James and Laura Gill acquired the tract to the date of trial. The disputed tract was fenced on the north as a part of their farm; they paid taxes on it throughout the years and used it regularly for the pasture of livestock. The fence erected by the Gills and regarded as the boundary line was replaced in 1952 with a more substantial woven wire fence by Anderson. This fence was kept in constant repair by the Gills and the Andersons and their successors in title from the time of its construction to the date of trial. Robert Gill testified that the original purpose of the fence was to divide his father's land from those parcels which his father sold.

In Anderson's application to register his lands, erroneously including the disputed tract, only Lutheran Brotherhood and one Lawrence King, who then occupied the Heath Park Farm, were listed as persons who appeared of record or who were known to the applicant to claim any right, title, estate, lien, or interest in the land described in the application. Following that, the names of James Gill and Laura Gill and three others were listed under a provision on the form reading "Names and addresses of the owners of adjoining lands affected by settling or establishing boundary lines." After the filing of the application, the Rice County examiner of titles also erroneously reported that the lands described in the application were owned by Endre B. Anderson and stated that James Gill and Laura Gill as owners of the adjoining lands should be made defendants.

Although the printed form of application included appropriate language for a request to fix the boundary lines of the land to be registered, as authorized by Minn. St. 508.06(11),[1] it seems apparent to us, as indicated by the testimony of the attorney rep-

---

[1] Minn. St. 508.06(11) provides in part: "If it is desired to fix and establish the boundary lines of the land, the full names and post-office addresses of all owners of adjoining lands which are in any manner affected thereby shall be fully stated; otherwise the decree shall not have the effect to fix or determine the boundary lines."

resenting Anderson, that the Gills were named in the application for that purpose and not because Anderson was asserting any claim of right or interest in the disputed tract. In fact, neither he nor any of his successors in title except defendants to this action have ever asserted any such claim. The record indicates that the attorney representing Anderson personally served the summons on the Gills and that for years he regarded the Gills as clients of his law office. It seems obvious, although not specifically found by the court, that the attorney included the Gills and served them with notice as adjoining owners merely in response to the printed form even though there apparently was no desire to fix boundary lines, since no survey was made and no description of judicial landmarks was included in the decree of registration. It is undisputed that the Gills made no appearance in the proceeding, and the order and decree of registration was entered November 27, 1951, by default.

Title to the land described in the certificate of title, including the disputed tract, was subsequently transferred to numerous persons, none of whom ever claimed the disputed tract or exhibited any knowledge that it was included in the certificate of title until its erroneous inclusion was discovered in 1969 during probate of the estate of Laura Gill. In 1967, Leonard and Oselia Blom purchased the property which Anderson originally had purchased from the Gills. In 1968, the Bloms' daughter, defendant Maxine Blom Hale, bought a small portion of her parents' property, including the disputed tract. She testified that she and her husband bought the land because they believed the site was ideal for the home they were planning. It is clear from the record that Mrs. Hale was under the impression that they were merely purchasing a scenic knoll north of the disputed 10-acre tract. Mrs. Hale testified that she and her husband were "unbelievably unconcerned about the number of acres" and that they "wanted the knoll, and that was it." She also testified that, prior to their purchase, they were fully aware of the existence of the fence.

The knoll property was appraised at $8,000 by a real estate

broker employed by Mrs. Hale's father. The same appraiser at trial valued the disputed 10-acre tract at $10,000. Mrs. Hale testified at trial that she paid $8,000 for the land purchased from her parents.

Upon discovering that the disputed tract had been included in Anderson's certificate of title and in Mrs. Hale's certificate of title, defendants asserted a claim to the disputed tract. They contend that title to the disputed tract was indefeasible because the time within which to amend the certificate had long passed and that plaintiffs' predecessors, served with notice of the registration proceedings, chose to default and permit title to be registered in the name of Anderson, defendants' predecessor in title.

Plaintiffs argue that title to the disputed tract, despite the conclusiveness of a registration certificate, can be restored to them pursuant to the provisions of § 508.71, subd. 2, or by imposing a constructive trust upon defendants, as the trial court did.

We have recently reviewed the underlying purposes of our title registration law in Konantz v. Stein, 283 Minn. 33, 167 N. W. 2d 1 (1969), and in Moore v. Henricksen, 282 Minn. 509, 165 N. W. 2d 209 (1968). It is unnecessary to do more than reaffirm our declaration of those purposes and our adherence to the conclusiveness of a title to land registered pursuant to the Torrens system. We find, however, defendants' claim to the disputed tract, which is based solely upon the underlying purpose of the title registration law, to be wholly without merit. Section 508.71, subd. 2, is clearly designed to afford relief under the peculiar facts of this case. It provides in pertinent part:

"A registered owner or other person in interest may, at any time, apply by petition to the court, upon the ground * * * that any error or omission was made in entering a certificate or any memorial thereon * * * or upon any other reasonable ground; and the court may hear and determine the petition after notice to all parties in interest, and may order the entry of a new certificate, the entry or cancellation of a memorial upon a certificate, or grant any other relief upon such terms * * * as it may

consider proper; but the provisions of this section shall not give the court authority to open the original decree of registration, and nothing shall be done or ordered by the court which shall impair the title or other interest of a purchaser who holds a certificate for value and in good faith, or of his heirs or assigns without his or their written consent."

The plain meaning of these provisions is that they are intended to prevent the unjust enrichment that otherwise would necessarily result if the purchaser of registered land obtained more land than was owned, claimed, or possessed by his predecessor in title who registered the title. No person holding a certificate of title to registered land ought to acquire title to land not intended to be purchased and conveyed, and for which no consideration was paid, solely on the ground that the basic purpose of the Torrens registration procedure precludes a challenge to the title of lands described in the certificate of registration except in cases of lack of jurisdiction or fraud. This case represents no more than a correction of an error admittedly committed during the registration proceedings. To permit defendants to maintain their registered title to the disputed tract would exploit the title registration law and would accomplish a manifest injustice. To take from plaintiffs, the heretofore unchallenged owners of the disputed tract, title to their lands would amount to senseless capitulation to the "conclusiveness" of a Torrens decree. Such a mechanical approach would sacrifice substance for the sake of form.

We do not by this decision intend that registration of title should not be conclusive against the holders of all claims who have been given due notice of the proceeding, but rather hold that, under the peculiar facts of this case, a purchaser of a specific tract cannot enlarge the area of land purchased simply on the basis that the certificate of title erroneously includes adjoining lands. We hold, further, that such error is subject to correction under § 508.71, subd. 2, when it is found upon adequate evidence that the petitioner in the title registration proceedings

neither claimed nor could claim any right, title, or interest in the erroneously included lands even though their inclusion had occurred without intent to defraud.

While such a disposition of the case at hand (in which plaintiffs' predecessor in title was served with notice of the registration proceedings) might at first glance appear inconsistent with the rationale of Konantz v. Stein, *supra* (in which the party claiming title received no notice of the registration proceedings), closer scrutiny shows that our disposition of this case is not inconsistent with Konantz. As noted previously, Endre B. Anderson, defendants' predecessor in title, listed the Gills as adjoining landowners in his registration application but failed to include them as claimants of any right, title, or interest in the lands to be registered. As a result, the notice received by the Gills was directed to that part of the proceedings which would fix the boundaries rather than determine and register title to the lands. In our opinion, such limited and defective notice should be afforded no greater legal significance than the absence of any notice, as found in the case of Konantz v. Stein, *supra*.

There would appear to be no necessity for imposing a constructive trust, as the trial court did, to achieve the correcting of the certificate of title. Although granting such additional relief in no way detracts from the trial court's correct disposition of the case, under the provisions of § 508.71, subd. 2, the court is granted express authority to order the cancellation of Mrs. Hale's certificate of title and the issuance of a new certificate from which the erroneously included land is deleted. Such relief does not offend the prohibition against opening "the original decree of registration." With respect to the disputed tract, the registration proceeding must be regarded as a nullity.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.